# EXHIBIT F

trellis

Date:
July 10th, 2025

CASE NUMBER: 25STCV20217

# Complaint; Filed by: Isamar Albertto, (Plaintiff); As to: Apple, Inc. (Defendant)

Document prepared for:
Attorney Abigail East

**CASE NAME**

ISAMAR ALBERTTO VS APPLE, INC.

**DOCUMENT FILED DATE**

July 8th, 2025

**CASE FILING DATE**

July 8th, 2025

**COUNTY**

Los angeles county, CA

**JUDGE**

Samantha P. Jessner

**CATEGORY**

Fraud (no contract) (General Jurisdiction)

**STATUS**

Pending

**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
*erik@malkpogolaw.com*
1241 S Glendale Ave, Ste. 204
Glendale, CA 91205
Tel: (818) 484-5204
Fax: (818) 824-5144

*Counsel for Plaintiff and the Proposed Class*

**Electronically FILED by Superior Court of California, County of Los Angeles 7/08/2025 9:52 AM David W. Slayton, Executive Officer/Clerk of Court, By J. Covarrubias, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| ISAMAR ALBERTTO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE, INC.<br><br>Defendant. | Case No. 25STCV20217<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)<br>2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)<br>3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)<br>4. FRAUD<br>5. NEGLIGENT MISREPRESENTATION<br>6. BREACH OF CONTRACT<br>7. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY<br>8. QUASI-CONTRACT / UNJUST ENRICHMENT<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Isamar Albertto ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Action against Apple, Inc. ("Apple" or "Defendant"). Plaintiff's allegations are based upon personal knowledge as to her own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes substantial additional evidentiary support will exist for the allegations set forth below, after a reasonable opportunity for discovery.

## I. INTRODUCTION

1. Last summer, Apple launched a pervasive marketing campaign across all media platforms to promote its latest iPhone 16 model, spotlighting what it branded as the groundbreaking "Apple Intelligence" suite of features, including significant AI-driven enhancements to Siri.

2. For months, the trillion-dollar tech giant touted these AI capabilities as the cornerstone of the new iPhone's appeal, promising consumers a product that would redefine smartphone use in the new AI economy.

3. Apple's advertisements saturated the internet, television, and other airwaves to cultivate a clear and reasonable consumer expectation that these transformative features would be available upon the iPhone's release.

4. This drove unprecedented excitement in the market, even for Apple, as the company knew it would, and as part of Apple's ongoing effort to convince consumers to upgrade at a premium price and to distinguish itself from competitors deemed to be winning the AI-arms race.

5. But Apple also knew none of it was true. Recently, under mounting pressure from outraged consumers and industry scrutiny, Apple was forced to acknowledge that the heralded Apple Intelligence features, including the Siri enhancements that fueled the greatest consumer excitement, did not exist then and do not exist now.

6. Worse, Apple has admitted that if these features ever materialize, it won't be until 2026—two years after its pervasive marketing campaign built on a lie.

7. Against this backdrop, Apple deceived millions of consumers into purchasing new phones they did not need based on features that do not exist, in violation of multiple false advertising

and consumer protection laws. Defendant advertised that these products would be equipped with specific "Apple Intelligence" features ("Apple Intelligence") even though they were not.

8. This putative class action therefore seeks injunctive relief to ensure Apple permanently ceases its deceptive conduct, together with monetary damages to recover the unlawful price premium that millions of consumers paid for Apple's mirage of innovation.

9. Plaintiff Ms. Albertto is one of those consumers, and brings this lawsuit on behalf of herself and all similarly situated purchasers ("Class Members") of the Apple iPhone 16 generation and other products Defendant advertised would be equipped with Apple Intelligence features (the "Products").

10. Prior to 2024, Apple knew its customer base was increasingly interested in generative AI features. To substantially increase sales of the upcoming iPhone 16 series, Apple announced at the annual Worldwide Developer Conference ("WWDC") on June 10, 2024, a release of its own artificial intelligence model, "Apple Intelligence."[1]

11. Apple promoted Apple Intelligence as a grouping of Generative AI tools on its upcoming lineup of iPhones and other devices. Defendant Apple indicated that the Apple iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro and iPhone 16 Pro Max, along with certain other Apple products, would come enabled with Apple Intelligence, and the improved capabilities present in those features ("Challenged Representations").

12. As has been revealed, however, Apple knew at the time of making its false promises that these features did not exist, but were instead still in early development (at best) and thus would not be included with the newly released iPhones.

13. Apple's fraud on the market began in approximately mid-2024, when it first launched marketing for the new iPhone Products. Its false campaign persisted for months prior to, and after, the new iPhone 16 release across all media. The Challenged Representations conveyed that the

[1] Samantha Kelly, *Apple Introduces AI to its products at WWDC*, CNN, (June 10, 2024) https://www.cnn.com/business/live-news/apple-wwdc-keynote-06-10-24/index.html#:~:text=Apple%20introduced%20%E2%80%9CApple%20Intelligence%E2%80%9D%20%E2%80%93,host%20of%20Apple%20product%20updates.

Products would be equipped with specific artificial intelligence features under the "Apple Intelligence" umbrella. These representations include but are not limited to:

a) "With Apple Intelligence, Siri can draw on a user's personal context to answer questions."[2]

b) "Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, 'Play that podcast that Jamie recommended,' and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, 'When is Mom's flight landing?' and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time."[3]

c) "With Apple Intelligence, Siri will be able to take hundreds of new actions in and across Apple and third-party apps. For example, a user could say, 'Bring up that article about cicadas from my Reading List,' or 'Send the photos from the barbecue on Saturday to Malia,' and Siri will take care of it."[4]

d) "Apple introduced the new iPhone 16 lineup, built from the ground up for Apple Intelligence and featuring the faster, more efficient A18 and A18 Pro chips — making these the most advanced and capable iPhone models ever."[5]

e) That Siri would be able to obtain and provide information to the user based on integration of all apps on the iPhone, for example, being able to search, via

---

[2] Apple Newsroom, *Apple Intelligence is available today on iPhone, iPad, and Mac*, APPLE (October 28, 2024) https://www.apple.com/newsroom/2024/10/apple-intelligence-is-available-today-on-iphone-ipad-and-mac

[3] Apple Newsroom, *Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the core of iPhone, iPad and Mac*, APPLE (June 10, 2024) https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/.

[4] *Id.*

[5] Apple Newsroom, *Apple Intelligence Comes to iPhone, iPad, and Mac Starting Next Month*, APPLE (Sept. 9, 2024) https://www.apple.com/newsroom/2024/09/apple-intelligence-comes-to-iphone-ipad-and-mac-starting-next-month/.

voice command, the name of an individual the user met several months ago at a specific location.[6]

14. The Challenged Representations were widely and prominently dispersed throughout Defendant's official website, social media, regularly-aired television advertisements, and Defendant's authorized retail vendors. Apple's falsehoods were viewed widely by the Public, as Apple intended, including because the company elected to run the deceptive campaign during the baseball playoffs and NFL season when it knew millions of viewers across California would be an especially captive audience for its fraudulent advertising.

15. On April 22, 2025, the Better Business Bureau's National Advertising Division ("NAD") issued a recommendation that "Apple Discontinue or Modify Availability Claims for Certain Apple Intelligence AI Features."[7] The NAD had launched an inquiry into Apple Intelligence after receiving complaints that Apple had been promoting features in its products that did not exist.[8] The NAD noted that the inquiry focused on "express and implied claims made on the Apple Intelligence webpage and in promotional materials for the iPhone 16 and iPhone 16 Pro that conveyed the availability of certain Apple Intelligence features, including Priority Notifications, Image Generation tools (Image Playground, Genmoji, and Image Wand), ChatGPT integration into Siri and Writing Tools, and new Siri capabilities."[9]

---

[6] Omar Sohail, *Apple Intelligence Ad Showing New Siri Has Been Removed*, WCCFTECH (Mar. 8, 2025) https://wccftech.com/apple-intelligence-ad-showing-new-siri-has-been-removed/.

[7] *National Advertising Division Recommends Apple Discontinue or Modify Availability Claims for Certain Apple Intelligence AI Features*, BETTER BUSINESS BUREAU (April 22, 2025), https://bbbprograms.org/media/newsroom/decisions/apple-intelligence#:~:text=National%20Advertising%20Division%20Recommends%20Apple%20Discontinue%20or,National%20Advertising%20Division%20recommended%20that%20Apple%20Inc.

[8] Amber Neely, *NAD told Apple to modify or discontinue certain Apple Intelligence feature claims*, APPLE INSIDER (Apr 22, 2025), https://appleinsider.com/articles/25/04/22/bbb-told-apple-to-modify-or-discontinue-certain-apple-intelligence-feature-claims.

[9] *National Advertising Division Recommends Apple Discontinue or Modify Availability Claims for Certain Apple Intelligence AI Features*, BETTER BUSINESS BUREAU (April 22, 2025), https://bbbprograms.org/media/newsroom/decisions/apple-intelligence#:~:text=National%20Advertising%20Division%20Recommends%20Apple%20Discontinue%20or,National%20Advertising%20Division%20recommended%20that%20Apple%20Inc.

16. As the Better Business Bureau NAD explained, Apple's claims that these AI features were "Available Now" were misleading and not properly supported when made:

> "NAD found that Apple's unqualified "Available Now" claim, positioned at the top of its Apple Intelligence webpage and above detailed feature descriptions, reasonably conveyed the message that all listed features—including Priority Notifications, Image Playground, Genmoji, Image Wand, and ChatGPT integration—were available at the launch of the iPhone 16 and iPhone 16 Pro.
>
> Although Apple launched these features in staggered software updates between October 2024 and March 2025, **NAD found that these claims were not properly supported at the time they were first made.** NAD further found that Apple's disclosures—such as footnotes and small print disclosures—were neither sufficiently clear and conspicuous nor close to the triggering claims.
>
> While these features are now available, **NAD recommended Apple avoid conveying the message that features are available when they are not**."[10]

17. Further, NAD reviewed claims regarding Apple's new artificial intelligence Siri functionality, which also appeared under the "Available Now" heading on Apple's website:

> "During the inquiry, Apple informed NAD that these Siri features would not be available on the original timeline and that it had updated its promotional materials accordingly and modified claims and disclosures to adequately communicate their status.
>
> Additionally, Apple also permanently discontinued the "More Personal Siri" video demonstration. Therefore, NAD did not review these claims and will treat them, for compliance purposes, as though **NAD recommended they be discontinued**."[11]

18. Following NAD's inquiry, Apple removed the "available now" claim from the top of its Apple Intelligence webpage in late March.[12]

19. Apple's Chief Executive Officer Tim Cook announced on a May 1, 2025 earnings call that Apple needs "more time" to upgrade Siri's AI features and capabilities.[13] When asked about

---

[10] *Id.*
[11] *Id.*
[12] Emma Roth, *Apple drops 'available now' from Apple Intelligence page*, THE VERGE (Apr 22, 2025), https://www.theverge.com/news/653413/apple-intelligence-available-now-advertising-claim.
[13] *Apple Needs 'Time' to Upgrade Siri; Services Revenue Dampened by Cost Hikes*, PYMNTS (May 1, 2025), https://www.pymnts.com/apple/2025/apple-needs-time-to-upgrade-siri-services-revenue-dampened-by-cost-

specific reasons for the delay, Cook stated "we are making progress", but "it's just taking a bit longer than we thought."[14]. Apple has still not yet provided a timeline for when the advertised features will be released, other than claiming they will be available "in the coming year."[15]

20. Plaintiff ultimately relied on Apple's false and misleading claims about the AI capabilities of the iPhone 16. Plaintiff was exposed to Apple's deceptive and misleading advertising campaign that influenced her decision to purchase the Product.

21. The Challenged Representations misled reasonable consumers into believing the Products possessed certain AI qualities, capabilities, and features, that they simply do not have. As a result, Apple charged consumers for Products they would not have purchased, or at least not at its premium price, had the advertising been honest. Beyond exploiting unsuspecting consumers, Apple also gained an unfair advantage over competitors in the market who do not tout non-existent AI features, or who actually deliver them as promised.

22. Due to the risks and proliferation of false AI-related advertising in the consumer market, the California Attorney General's office issued a dedicated Legal Advisory to provide guidance to consumers and companies about their rights and obligations under California law.[16] Specifically, the advisory affirms that California's False Advertising Law "would prohibit false advertising regarding the capabilities, availability, and utility of AI products [.]"[17]

23. Apple, founded and based in California, is intimately familiar with these consumer protection laws. But in the race for AI market share, it decided to violate them anyway, misleading consumers into believing that the Products possessed AI features, functions, and benefits the Products simply do not have and, according to company and industry insiders, may never have.

---

hikes/#:~:text=Apple%20CEO%20Tim%20Cook%20said%20Thursday%20(May%201)%20that%20the,other%20voice%2Denabled%20AI%20chatbots.

[14] *Id.*

[15] Chance Miller, *Tim Cook Addresses Apple's Delay of Personalized Siri features*, 9TO5MAC (May 1, 2025), https://9to5mac.com/2025/05/01/tim-cook-addresses-apples-delay-of-personalized-siri-features/.

[16] *California Attorney General's Legal Advisory on the Application of Existing California Laws to Artificial Intelligence*, CALIFORNIA DEPARTMENT OF JUSTICE, https://oag.ca.gov/system/files/attachments/press-docs/Legal%20Advisory%20-%20Application%20of%20Existing%20CA%20Laws%20to%20Artificial%20Intelligence.pdf.

[17] *Id.*

Even if the promised features arrive years later, they will likely be available across competing technologies by then as well, rendering Apple's early campaign of supposedly unique and "innovative" capabilities meaningless. Based on its historical production cadence, it is also likely that Apple would be marketing another new iPhone series, leaving consumers who bought into Apple's false promises for the 16 series stuck with outdated technology for which they also overpaid. This is exactly the kind of calculated deception and market impact that California consumer protection laws were designed to prevent.

24. Consumers are increasingly seeking sophisticated artificial intelligence software for their phones and electronic products. According to a recent survey, 60% of consumers now consider AI features important when choosing their next smartphone, including 21% who say AI features are very important.[18] AI-powered Voice Assistants, such as Siri, are considered most useful and sought after by consumers.[19]

25. Defendant takes advantage of consumers' desire for cutting-edge artificial intelligence software and features on their phones, especially as Apple has been facing competition from other large smartphone manufacturers like Samsung and Google's Android.[20]

26. Plaintiff brings this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (defined *infra*), for dual primary objectives. ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class, a monetary recovery of the price premium Plaintiff and consumers have overpaid for the Products as a result of the Challenged Representations, as consistent with permissible law (including, for example, damages,[21] restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). ***Two***, Plaintiff seeks on

---

[18] Rishad Dsouza, *AI on smartphones – what features do consumers value most?* YouGov (Sept. 30, 2024) https://business.yougov.com/content/50614-ai-on-smartphones-what-features-do-consumers-value-most.

[19] *Id.*

[20] Daniel Howley, *Apple's AI Strategy Is Showing Troubling Cracks*, Yahoo Finance (Mar. 12, 2025) https://finance.yahoo.com/news/apples-ai-strategy-is-showing-troubling-cracks-150559429.html.

[21] Except as to the Consumer Legal Remedies Act ("CLRA") claim.

Plaintiff's individual behalf and on behalf of the Class and the public, injunctive relief to remedy the deceptive conduct. Injunctive relief is necessary to stop any current and future false advertising and otherwise remedy prior false advertising. Injunctive relief could require Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations; disclosure of the Product's prior false advertising and removal or modification of the Challenged Representations, including a corrective advertising campaign to correct its prior false and misleading representations; modification of the Products so that they live up to the Challenged Representations; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## II. PARTIES

***Plaintiff***

27. **Plaintiff Isamar Albertto** is a citizen of California and has resided in Los Angeles County, California, at all times relevant to this Complaint. Plaintiff purchased the Apple iPhone 16 Pro Max from Apple in October 2024 after relying on Apple's pervasive marketing campaign and believing that her new phone would contain the increased AI capabilities that Defendant repeatedly touted as part of its advertising.

28. In deciding to make the purchase, Plaintiff viewed and relied on Apple's advertising and marketing, including the Challenged Representations, leading Plaintiff to believe that the iPhone 16 Pro Max, would have the capabilities advertised, including the new features as part of "Apple Intelligence." Plaintiff relied heavily on this when deciding to purchase the Product.

29. At the time of purchase, Plaintiff did not know the Challenged Representations were false—i.e., that the iPhone would not be equipped with  capabilities and features advertised.

30. Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' advertising and marketing that contradicted the prominent Challenged Representations or otherwise suggested that the iPhone would not have the advertised capabilities.

31. Plaintiff would not have purchased the Products or would not have paid as much for the Products, had Defendant not made the false and misleading Challenged Representations and/or

had Plaintiff otherwise known that the Challenged Representations were not true—i.e., that the Products did not contain the capabilities that had been promised with Apple Intelligence.

32. Plaintiff desires to purchase Defendant's products again if the Challenged Representations were true—i.e., if Defendant's products actually had the capabilities advertised including the Apple Intelligence and advanced Siri features.

33. Plaintiff is not personally familiar with the technology behind the Products or their manufacturing and development, as Plaintiff does not possess any specialized knowledge, skill, experience, or education in artificial intelligence or smartphone software. Plaintiff in the future would therefore be unable to determine whether the Products' Challenged Representations are true—i.e., whether the capabilities of the Products are in fact as advertised.

34. Plaintiff is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' advertising and marketing.

35. Defendant continues to market and sell the Products and has not taken appropriate action to make clear the falsity or misleading nature of the Challenged Representations. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the products to perform as advertised and that its product features are accurately described.

***Defendant***

36. **Apple, Inc.** is an active California corporation with its principal place of business located at One Apple Park Way, Cupertino, California 95014. Apple regularly conducts business throughout California, including in Los Angeles County.

37. At all relevant times, Defendant was conducting business in the state of California, including the Class Period. Defendant is one of the owners, manufacturers, marketers, and distributors of the Products, and is the company that created, authorized, and controlled the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were

disseminated throughout California by Defendant and its agents to deceive and mislead consumers in the State of California into purchasing the Product.

## III. JURISDICTION AND VENUE

38. This Court has jurisdiction over this action under California Code of Civil Procedure § 410.10. This is an unlimited complex civil class action where the total damages incurred by Plaintiff and the Class in the aggregate exceeds the $35,000 jurisdictional minimum of this Court.

39. This Court has jurisdiction over Defendant because it is located within Los Angeles County, California. Defendant is a California based entity that operates exclusively in California. Based on the proposed class definition, all of the affected class members are, or were, citizens of California. Additionally, the alleged conduct giving rise to this action occurred entirely within California.

40. Venue is proper in this Court under California Bus. & Prof. Code § 17203 and Code of Civil Procedure §§ 395(a) and 395.5 because Defendant is headquartered within this Court's jurisdiction and because a substantial part of the events giving rise to Plaintiff's claims occurred in this County.

## IV. FACTUAL ALLEGATIONS

### A. Artificial Intelligence Smartphone Growth

41. The global demand for artificial intelligence powered smartphones continues to grow, particularly among younger consumers.[22] It is estimated that AI smartphones will make up 54% of total smartphone shipments by 2028.[23] Further, Generative AI smartphones are projected to be the fastest-growing segment in the smartphone category, outperforming the non-AI smartphone

[22] *AI Smartphones to Make 54% of Total Smartphone Shipments by 2028, 3x More Than This Year*, EDGE AI + VISION ALLIANCE (Sept. 23, 2024), https://www.edge-ai-vision.com/2024/09/ai-smartphones-to-make-54-of-total-smartphone-shipments-by-2028-3x-more-than-this-year/#:~:text=Search%20for%3A-,AI%20Smartphones%20to%20Make%2054%25%20of%20Total%20Smartphone%20Shipments%20by,3x%20More%20Than%20This%20Year&text=The%20global%20demand%20for%20AI,more%20than%20the%20average%20device.

[23] *Id.*

segment.[24] The global smartphone market is rapidly expanding, growing 7% in 2024 and reaching 1.22 billion units worldwide.[25]

42. As the leading global smartphone manufacturer, Apple holds 23% of the global smartphone share and shipped roughly 226 million iPhones worldwide in 2024.[26] Of the units shipped, shipments of the falsely-advertised 16 Pro and Pro Max in 2024 were at least 11% higher than the 15 Pro and Pro Max in 2023, reaching over 55 million units.[27]

43. Following the announcement of Apple Intelligence at the 2024 WWDC, Apple shares rose 7% to a record high. Analysts predicted that the new Apple Intelligence features could encourage a "cascade of new purchases" ahead of Apple's new products.[28]

### B. Apple Struggles to Keep Up in the AI "Arms Race"

44. Tech companies have raced to develop artificial intelligence technology to comply with growing consumer demand. Apple's competitors, Samsung and Google, use Google's Gemini AI platform and continue to add more AI functionality to their devices. Apple has struggled to keep up with AI developments and is "seemingly being lapped in the AI race."[29] Apple has drawn criticism and public embarrassment for its slow rollout of Apple Intelligence features.[30] Meanwhile,

---

[24] Francisco Jeronimo, *The Rise of Gen AI Smartphones*, IDC (July 5, 2024), https://blogs.idc.com/2024/07/05/the-rise-of-gen-ai-smartphones/#:~:text=Market%20Opportunity,78.4%25%20for%202023%2D2028.

[25] *Global smartphone market soared 7% in 2024 as vendors prepare for tricky 2025*, CANALYS (Feb. 3, 2025), https://canalys.com/newsroom/worldwide-smartphone-market-2024.

[26] *Global Smartphone Market Share: Quarterly*, COUNTERPOINT (Mar. 3, 2025), https://www.counterpointresearch.com/insight/global-smartphone-share/.

[27] *Id.*

[28] *Apple stock reaches record high after announcement of new AI* features, THE GUARDIAN (June 11, 2024), https://www.theguardian.com/technology/article/2024/jun/11/apple-stock-reaches-record-high.

[29] Mike Wuerthele and Wes Hilliard, *Everyone is a loser in the Apple Intelligence race*, APPLE INSIDER (Mar 11, 2025), https://appleinsider.com/articles/25/03/11/everyone-is-a-loser-in-the-apple-intelligence-race.

[30] *John Giannandrea out as Siri chief, Apple Vision Pro lead in*, APPLE INSIDER (Mar. 20, 2025), https://appleinsider.com/articles/25/03/20/john-giannandrea-out-as-siri-chief-apple-vision-pro-lead-in.

Apple's tech rivals such as Microsoft, Alphabet, Amazon, and Meta have pulled ahead in the AI field.[31]

45. Apple announced Apple Intelligence at the WWDC in 2024, even though core features did not exist and before allowing ample time to properly integrate the promised AI technology into Apple's operating systems.[32] Apple's pervasive and purposely false marketing campaign centered on delivering supposedly new and unprecedented AI technology and capabilities with the iPhone 16 series hid the truth from consumers. As a result, millions were falsely enticed to buy the Products, only to find out that the promised features did not exist and have been delayed for months.

46. Apple has yet to provide a clear timeline for when the artificial intelligence Siri features will be available. Some sources predict that the next-generation Siri as featured in Apple's deceptive advertising won't be ready until iOS 20 in 2027 at the earliest, 3 years after the Apple Intelligence announcement in 2024.[33]

47. It is reported that Apple executives, including software engineer Craig Federighi, "voiced strong concerns internally that the features didn't work properly — or as advertised — in their personal testing."[34] Sources also reported that employees in Apple's AI division "believe that work on the features could be scrapped altogether" and that the features may have to be rebuilt "from scratch."[35] Following the Siri development delays, Apple restructured its AI team, including replacing AI lead John Giannandrea who was the executive in charge of Siri.[36]

---

[31] *Apple Intelligence has failed to boost iPhone sales*, MSN (Jan. 11, 2025), https://www.msn.com/en-us/technology/artificial-intelligence/apple-intelligence-has-failed-to-boost-iphone-sales-ming-chi-kuo/ar-BB1rhczl?ocid=BingNewsVerp.

[32] Stevie Bonifield, *Apple Intelligence just ran into more bad news — and Siri is the problem*, YAHOO! TECH (March 3, 2025), https://www.yahoo.com/tech/apple-intelligence-just-ran-more-202000273.html.

[33] Samantha Kelly, *Major Siri Redesign May Be Delayed Again, Report Says*, CNET (March 3, 2025) https://www.cnet.com/tech/services-and-software/major-siri-redesign-may-be-delayed-again-report-says/.

[34] Jay Peters, *Apple Delays Upgraded Siri Intelligence Longer Than We Thought*, THE VERGE (March 7, 2025) https://www.theverge.com/news/626035/apple-delays-upgraded-siri-intelligence-longer-than-we-thought.

[35] *Id.*

[36] Malcolm Owen, *John Giannandrea out as Siri chief, Apple Vision Pro lead in*, Apple Insider (Mar. 20, 2025), https://appleinsider.com/articles/25/03/20/john-giannandrea-out-as-siri-chief-apple-vision-pro-lead-in.

48. Apple was aware that it could not release the promised technology on schedule, yet continued to falsely advertise the Products through a deceptive marketing scheme, prioritizing profits over truth in its quest to regain ground in the race for AI market share.

**C. Apple's Deceptive Advertising and Marketing of the Products**

49. Not only has Defendant marketed and advertised the Products with the Challenged Representations, but Defendant has engaged in a marketing campaign initiated before and continuing throughout the Class Period (defined *infra*) that repeats and reinforces the Challenged Representations. Defendant's pervasive advertising included online and television advertising as well as numerous press releases, media statements, and product demonstration videos, touting non-existent features without making it clear to consumers that the Products would lack advertised capabilities.

50. Notably, in September 2024 Defendant released a commercial for its new iPhone lineup that highlighted Siri's personalization features and upgraded experience on the iPhone 16 that was aired extensively on television as well as online.[37] However, the Products do not have the capabilities as depicted in the advertisement. Following Defendant's announcement of the delay of the next generation Siri on March 7, 2025, Defendant pulled this particular commercial from YouTube. Still, it has failed to retract all the similarly false representations in the market that began in the Summer of 2024, much less take any action that would adequately remedy the consumers harmed by the company's widespread deception.

**D. Plaintiff and Reasonable Consumers Were Misled into Buying the Products to Their Detriment**

51. The Challenged Representations lead reasonable consumers, like Plaintiff, into believing that the Products conform to the Challenged Representations—meaning, consumers are led to believe that the Products would contain the capabilities advertised and perform as claimed by Apple in prior presentations and marketing of the Products.

---

[37] Omar Sohail, *Apple Intelligence Ad Showing New Siri Has Been Removed*, WCCFTECH (March 8, 2025) https://wccftech.com/apple-intelligence-ad-showing-new-siri-has-been-removed/.

52. The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning that it is important to consumers that the iPhone 16 would contain the capabilities advertised as present in the Apple Intelligence features. Apple knew that claiming its new iPhone lineup would have these AI capabilities would be material to the public given how popular AI is generally and thus used a mirage of AI innovation, to drive sales of the iPhone 16 and to obtain an unfair competitive edge over other manufacturers actually providing advanced AI features (or not falsely promising that they do).

53. The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products.

54. The Challenged Representations are deceptive because the Products do not contain the technical capabilities that Apple advertised.

55. The Class who purchased the Products, including Plaintiff, did not know and had no reason to know, at the time of purchase, that the Products' Challenged Representations were false, misleading, deceptive, and unlawful.

56. Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside the Products' design/purpose to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

57. Defendant knew or should have known that its false claims regarding the capabilities of the Apple Intelligence functions would mean that those consumers would believe the iPhone 16 was capable of those functions, and would induce the consumers to purchase it.

58. Defendant advertised the Apple Intelligence functions for the iPhone 16 lineup knowing that it could not actually provide the capabilities that it was advertising.

59. Defendant knew or should have known of the Challenged Representations' materiality to consumers. Apple advertised Apple Intelligence as a way to enhance sales of its iPhones and other products, knowing that consumers highly prized artificial intelligence capabilities. Apple

made the false and misleading representations with the knowledge that the Apple Intelligence software nor the Products had the capabilities Apple claimed in order to artificially inflate demand, and the price, for the iPhone 16 series.

60. Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations'—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the representations in deciding to buy the Products, Defendant deliberately chose to market, and continue marketing, the Products with the Challenged Representations thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations would mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted.

61. Plaintiff and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attributes claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's Challenged Representations, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

62. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

63. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA.

64. In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, over a long period of time, in order to gain an unfair

advantage over competitor products and to take advantage of consumers' desire for Products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations made on the type of products at issue). Thus, Plaintiff and Class Members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of Plaintiff (individuals who seek or acquire, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

65. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of a corrective advertising campaign and affirmative disclosures, is necessary to dispel the public misperception about the Products that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Product's true nature and an advertising campaign focused on correcting the prior false and misleading statements. An injunction requiring affirmative disclosures, as well as corrective advertising, to dispel the public's misperception and prevent the ongoing deception, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future sales of Products, and quantities of past/future sales of Products.

66. Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

67. Lastly, this is an initial pleading in this action, and discovery has not yet commenced. No class has been certified yet. No expert discovery has commenced. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ALLEGATIONS

68. Plaintiff brings this action as a class action on behalf of herself and all others similarly situated as members of the Class defined as follows:

> **"All citizens of California who, within four years prior to the filing of this action, purchased any Apple device advertised as having Apple Intelligence, including the Apple iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, and other Apple devices ("Class")."**

This definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

69. Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the judicial officer's immediate family.

70. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

71. Members of the Class are so numerous that joinder of all members is impracticable. The Class consists of, at minimum, tens of thousands of purchasers, dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

72. There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a) Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b) Whether Defendant's conduct of advertising and selling the Products was false or deceptive;

c) Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

d) Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

e) Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

f) Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

g) Whether Defendant's advertising and marketing of the Products are misleading in violation of Business and Professions Code section 17500, *et seq*.;

h) Whether Defendant knew or by the exercise of reasonable care should have known its advertising and marketing were and are misleading in violation of Business and Professions Code section 17500, *et seq*.;

i) Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j) Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k) Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

l) Whether Plaintiff and the Class paid more money for the Products than they actually received;

m) How much more money Plaintiff and the Class paid for the Products than they actually received;

n) Whether Plaintiff and the Class are entitled to injunctive relief; and

o) Whether Defendant was unjustly enriched by its unlawful conduct.

73. The common questions of law and fact predominate over questions that affect only individual Class Members.

74. Plaintiff's claims are typical of the claims of the Class Members Plaintiff seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

75. Plaintiff is an adequate representative of the Class she seeks to represent because Plaintiff's interests do not conflict with the interests of the Class Members. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

76. Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories. All iPhones have to be

registered when activated, during which time, Apple collects the information about the user including their email addresses and more – and thus maintains information regarding its purchasers.

77. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a) The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b) Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c) Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d) When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e) This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

78. Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

79. The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

80. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT ONE**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

**(On Behalf of the Class)**

81. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

82. This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiff and the Class who purchased the Products within the applicable statute of limitations.

83. California Business & Professions Code, sections 17200, *et seq*. (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

84. Defendant, in its pervasive advertising and marketing of the Products, made misleading statements regarding the quality and characteristics of the Products—specifically, the Challenged Representations regarding the capabilities of Apple Intelligence. Instead, the Products lacked the advertised functionality of Apple Intelligence, failing to perform tasks and provide features as represented in Defendant's marketing materials. Furthermore, contrary to Defendant's claims of advanced AI capabilities, the Products offered a significantly limited or entirely absent version of Apple Intelligence, misleading consumers about its actual utility and performance. Worse yet, Defendant promoted its Products based on these overstated AI capabilities, leading consumers to believe they were purchasing a device with features that did not exist or were materially misrepresented. Such claims were made by Defendant in marketing its product.

85. Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising because the Products lack the advertised capabilities of Apple Intelligence. Thus, the claims regarding the advanced AI features are not capable of performing as advertised, and the Products fail to deliver the advertised functionality for everyday use and during various activities, as directed and intended by Defendant. Further, the Products are promoted for their sophisticated AI, leading consumers to expect a level of intelligence that is not actually present. Defendant knew (and knows) that the Products do not possess the advertised Apple Intelligence capabilities, posing a misrepresentation of their functionality, and yet Defendant intentionally advertised and marketed the Products to deceive reasonable consumers and continues to do so presently.

86. Defendant's advertising and marketing of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products possess the advanced AI capabilities Apple advertised, and, thus, are equipped with the specific capabilities advertised.

87. Plaintiff and the Class have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations—namely Plaintiff and the Class lost a significant portion of the purchase price for the Products they bought from the Defendant.

88. Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

89. Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

90. All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

91. Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the Class seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and marketing of the Products. Likewise, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

92. As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

93. Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that

reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. This misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**A. "Unfair" Prong**

94. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

95. Defendant's action of falsely advertising the Products with the Challenged Representations encouraged consumers to purchase the Products with the expectation that the Apple Intelligence features would be as capable as advertised. However, the Apple Intelligence features do not perform as advertised, causing financial injuries to consumers, who do not receive Products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive advertising and marketing of the Products. Accordingly, the injuries caused by Defendant's deceptive advertising and marketing outweigh any benefits.

96. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

97. Here, Defendant's conduct of advertising the Products as having artificial intelligence capabilities they do not actually have results in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

98. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

99. Defendant's advertising and marketing of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

100. There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

101. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

102. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of advertising and marketing the Products with the Challenged Representations.

103. Plaintiff and the Class have suffered injury in fact, have lost money and purchased an inferior product as a result of Defendant's unfair conduct. Plaintiff and the Class paid an unwarranted premium for these Products. Specifically, Plaintiff and the Class paid for Products which were advertised as having advanced artificial intelligence capabilities that were at least as good as, if not better, than the products of other competitors in the market.

104. Plaintiff and the Class would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and marketing were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**B. "Fraudulent" Prong**

105. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

106. Defendant used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff and the Class. The Challenged Representations are deceptive, and Defendant knew, or should have known, of its deception. The Challenged Representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

107. As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

108. Plaintiff and the Class reasonably and detrimentally relied on the material and deceptive Challenged Representations to their detriment in that they purchased the Products.

109. Defendant has reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

110. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

111. Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing the Products with the Challenged Representations.

112. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the Class paid for Products that were advertised as having advanced artificial intelligence capabilities that were at least as good as, if not better, than the products of other competitors in the market. Instead, the software included did not come close to what was advertised, and was well below the capabilities of other competing products. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**C. "Unlawful" Prong**

113. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

114. Defendant's advertising and marketing of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth below in the sections regarding those causes of action.

115. Additionally, Defendant's use of the Challenged Misrepresentations to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

116. Defendant's conduct in making the deceptive representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated in this lawsuit.

117. Defendant's advertising and marketing of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

118. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Products with the Challenged Representations.

119. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

120. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of deceptive advertising of the Products.

121. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the Class paid an unwarranted premium for the

Products. Plaintiff and the Class would not have purchased the Products if they had known that the Products were not equipped with the capabilities being advertised. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

**(On Behalf of the Class)**

122. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

123. Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

124. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

125. Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Challenged Representations disseminated to the public through the Products' advertising and marketing. These representations were deceptive because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

126. In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

127. Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the Class, to purchase the Products.

128. As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result, as well as a corrective advertising campaign to correct prior misrepresentations.

129. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for a Product that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff.

130. Defendant's misconduct is oppressive and subjected Plaintiff and consumers to unjust hardship, and knowingly disregarded their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**COUNT THREE**

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

**(On Behalf of the Class)**

131. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

132. Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

133. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

134. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a) because they are tangible objects that Plaintiff and the Class purchased primarily for personal, family, or household purposes.

135. Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c) because it is a corporation.

136. Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d) because they are individuals who purchased the Products for personal, family, or household purposes.

137. The purchase of the Products by Plaintiff and members of the Class are "transactions" as defined by the CLRA under California Civil Code section 1761(e) because Plaintiff entered into an agreement with Defendant or its authorized vendors to purchase the Products.

138. Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the Class through the misleading, deceptive, and fraudulent Challenged Representations:

a) Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

b) Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . when they are of another."

c) Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [] as advertised."

139. Defendant's uniform and material representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Challenged Representations were misleading.

140. Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

141. Plaintiff and members of the Class could not have reasonably avoided such injury. Plaintiff and members of the Class were unaware of the existence of the facts that Defendant

suppressed and failed to disclose, and Plaintiff and members of the Class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

142. Plaintiff and the Class suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

143. As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies.

144. Pursuant to Section 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the misleading claims challenged herein and requiring Defendant to undertake a corrective advertising campaign to correct its prior false and misleading representations. Plaintiff also requests a court order requiring Defendant to provide restitution to Plaintiff and the Class for the money wrongfully acquired. Unless this injunctive relief is granted, Plaintiff will suffer irreparable harm.

145. Plaintiff respectfully requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendant should be compelled to provide restitution to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations.

146. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

147. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant has failed to make clear that the Products do not contain Apple Intelligence capabilities as originally advertised. Injunctive relief is necessary to correct past harm and prevent future harm—

none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of advertising or marketing modifications as well as a corrective advertising campaign, is necessary to dispel public misperception about the Products that has resulted from Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include providing Apple Intelligence capabilities as advertised or making clear to consumers that the Products were not capable of the abilities advertised. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiff is, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiff and Class members overpay for the Products), rendering injunctive relief a necessary remedy.

**COUNT FOUR**

**Fraud**

**(On Behalf of the Class)**

148. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

149. Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

150. Defendant affirmatively misrepresented the capabilities of the Products when selling and marketing them.

151. Defendant also knew that its misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

152. Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

153. Plaintiff and Class Members would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

154. Plaintiff and Class Members had a right to rely upon Defendant's representations as Defendant maintained monopolistic control over knowledge of the true quality of the Products.

155. Plaintiff and Class Members sustained damages as a result of their reliance on Defendant's misrepresentations, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

**COUNT FIVE**

**Negligent Misrepresentation**

**(On Behalf of the Class)**

156. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

157. Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

158. Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Products.

159. Defendant breached its duty to Plaintiff and the Class by advertising the products as having capabilities they do not actually have.

160. Defendant knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, detailed, or otherwise represented or suitable for their intended use and were otherwise not as warranted and represented by Defendant.

161. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Products had they known that the Products do not conform to the Product's marketing, advertising, or statements.

162. Plaintiff and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available.

///

///

///

**COUNT SIX**

**Breach of Contract**

**(On Behalf of the Class)**

163. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

164. Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

165. Defendant expressly warranted that the Products would perform as advertised. Defendant's claims regarding the Products constituted an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff and the Class Members placed importance on Defendant's claims.

166. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class Members.

167. Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class Members by not providing Products that conform to the advertising and marketing claims.

168. As a result of Defendant's breach of contract, Plaintiff and the Class Members have been damaged in the amount to be determined at trial.

**COUNT SEVEN**

**Breach Of Implied Warranty of Merchantability**

**(On Behalf of the Class)**

169. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

170. Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

171. Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

172. Defendant is a merchant with respect to the Products at issue.

173. In order to be merchantable, goods must conform to the promises or affirmations of fact made in the advertising of the product.

174. Defendant breached the implied warranty of merchantability to Plaintiff and the Class in its representations that the Products contained the Apple Intelligence capabilities advertised when that was actually false.

175. As a result of Defendant's misleading conduct, Plaintiff and the Class did not receive merchantable goods as impliedly warranted by Defendant.

176. Defendant did not exclude or modify the Product's implied warranty of merchantability.

177. As a proximate result of Defendant's breach of its implied warranty, Plaintiff and the Class incurred damages. Plaintiff and the Class were damaged as a result of Defendant's failure to comply with its obligations under the implied warranty, since Plaintiff and the Class paid for a Product that did not have the promised quality and nature, paid a premium for the Product when they could have instead purchased other less expensive smartphones or other products, and lost the opportunity to purchase similar products that provided the capabilities advertised.

178. As a result of Defendant's breach of contract, Plaintiff and the Class Members have been damaged in the amount to be determined at trial.

**COUNT EIGHT**

**Quasi-Contract / Unjust Enrichment**

**(On Behalf of the Class)**

179. Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

180. Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

181. To the extent required by law, this cause of action is alleged in the alternative.

182. Plaintiff and Class members conferred monetary benefits on Defendant by purchasing the Products. Defendant's profits are funded entirely from their generated revenues – payments

made by or on behalf of Plaintiff and Class Members. As such, a portion of these payments was attributable to Defendant's Challenged Representations.

183. Defendant knew that Plaintiff and the Class conferred a benefit which Defendant accepted, and through which, Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that contrary to its representations, the Products did not have the technical capabilities they had advertised, these misleading representations caused injuries to Plaintiff and Class members because they would not have purchased the Product if the true facts were known.

184. Defendant enriched itself by saving the costs they reasonably should have spent on ensuring that the Products had the technical capabilities advertised, and conform with their advertised representations.

185. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all causes of action as follows:

a. For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative

advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class requested herein, consistent with applicable law and pursuant to only those causes of action so permitted;

e. For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff respectfully demands a trial by jury for all claims.

DATED: July 8, 2025

**MALK & POGO LAW GROUP, LLP**

/s/ [signature]

Valter Malkhasyan, Esq.
Erik Pogosyan, Esq.

*Counsel for Plaintiff and the Proposed Class*

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 7

**25STCV20217**
**ISAMAR ALBERTTO vs APPLE, INC.**

July 14, 2025
4:05 PM

Judge: Honorable Samantha Jessner
Judicial Assistant: A. Morales
Courtroom Assistant: T. Bivins

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Court Order

By this order, the Court determines this case to be Complex according to Rule 3.400 of the California Rules of Court. The Clerk's Office has assigned this case to this department for all purposes.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Los Angeles Superior Court, within ten (10) days of service of this order.

By this order, the Court stays the case, except for service of the Summons and Complaint. The stay continues at least until the Initial Status Conference. Initial Status Conference is set for 10/01/2025 at 09:00 AM in this department. At least ten (10) days prior to the Initial Status Conference, counsel for all parties must discuss the issues set forth in the Initial Status Conference Order issued this date. Counsel must file a Joint Initial Status Conference Response Statement five (5) court days before the Initial Status Conference.

The Initial Status Conference Order, served concurrently with this Minute Order, is to help the Court and the parties manage this complex case by developing an orderly schedule for briefing, discovery, and court hearings. The parties are informally encouraged to exchange documents and information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of Appearance shall not constitute a waiver of any substantive or procedural challenge to the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Spring Street Courthouse, Department 7

**25STCV20217** July 14, 2025
**ISAMAR ALBERTTO vs APPLE, INC.** 4:05 PM

Judge: Honorable Samantha Jessner CSR: None
Judicial Assistant: A. Morales ERM: None
Courtroom Assistant: T. Bivins Deputy Sheriff: None

---

Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to Code of Civil Procedure Section 170.6. Nothing in this order stays the filing of an Amended Complaint pursuant to Labor Code Section 2699.3(a)(2)(C) by a plaintiff wishing to add a Private Attorney General Act ("PAGA") claim.

For information on electronic filing in the Complex Courts, please refer to https://www.lacourt.org/division/efiling/efiling2.aspx#civil. See, in particular, the link therein for "Complex Civil efiling." Parties shall file all documents in conformity with the Presiding Judge's First Amended General Order of May 3, 2019, particularly including the provisions therein requiring Bookmarking with links to primary documents and citations; that Order is available on the Court's website at the link shown above.

For efficiency in communication with counsel, the complex program requires the parties in every new case to use an approved third-party cloud service that provides an electronic message board. In order to facilitate communication with counsel prior to the Initial Status Conference, the parties must sign-up with the e-service provider at least ten (10) court days in advance of the Initial Status Conference and advise the Court which provider was selected.

The court has implemented LACourtConnect to allow attorneys, self-represented litigants and parties to make audio or video appearances in Los Angeles County courtrooms. LACourtConnect technology provides a secure, safe and convenient way to attend hearings remotely. A key element of the Court's Access LACourt YOUR WAY program to provide services and access to justice, LACourtConnect is intended to enhance social distancing and change the traditional in-person courtroom appearance model. See https://my.lacourt.org/laccwelcome for more information.

This Complex Courtroom does not use Los Angeles Superior Court's Court Reservation ("CRS") portal to reserve motion hearing dates. Rather, counsel may secure dates by calling the Courtroom Assistant at 213-310-70xx with the "xx" being the Department number, e.g. Dept. 1 is 01 and Dept. 10 is 10.

Court reporters are not provided for hearings or trials. The parties should make their own arrangements for any hearing where a transcript is desired.

If you believe a party or witness will need an interpreter, see the court's website for information on how to make such a request in a timely manner. https://www.lacourt.org/irud/UI/index.aspx

Counsel are directed to access the following link for further information on procedures in the

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

**Civil Division**

Central District, Spring Street Courthouse, Department 7

**25STCV20217** July 14, 2025
**ISAMAR ALBERTTO vs APPLE, INC.** 4:05 PM

Judge: Honorable Samantha Jessner CSR: None
Judicial Assistant: A. Morales ERM: None
Courtroom Assistant: T. Bivins Deputy Sheriff: None

---

Complex litigation Program courtrooms: https://www.lacourt.org/division/civil/CI0042.aspx.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within seven (7) days of service.

Certificate of Service is attached.

FILED
Superior Court of California
County of Los Angeles
07/14/2025
David W. Slayton, Executive Officer / Clerk of Court
By: A. Morales Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

ISAMAR ALBERTTO

Plaintiff,

vs.

APPLE, INC.

Defendants

Case No. 25STCV20217

**INITIAL STATUS CONFERENCE ORDER**

DATE: 10/01/2025

TIME: 9:00 a.m.

PLACE: DEPARTMENT 7, SPRING ST.

****JOINT STATEMENT DUE FIVE COURT DAYS IN ADVANCE OF HEARING****

This case has been assigned for all purposes to Judge Samantha P. Jessner.

Please read the important courtroom information for Department 7 posted on the court's website (www.lacourt.org) (go to "Courtroom Information on the Home page) which contains answers to many frequently asked questions.

The Court has scheduled an Initial Status Conference on the date and at the time set out above in Department 7, Second Floor, 312 North Spring Street, Los Angeles, California 90012.

Department 7 utilizes the LACourtConnect video and telephonic conference platform for hearings. Parties and counsel are invited to appear in person or via LACourtConnect. The Court has no preference. When appearing via LACourtConnect, please do so from a quiet place. Rules concerning court attire apply.

**COUNSEL TO FILE NOTICE OF APPEARANCE;**
**PLEADING STAY UNTIL FURTHER ORDER**

The Court orders each defendant promptly following service of summons and complaint to file a Notice of Appearance of counsel. The Notice of Appearance does not affect or prejudice any counsel's or party's legal position on any issue including without limitation any jurisdictional challenge.

The Court hereby issues a stay on the filing and service of any other pleadings.

Notwithstanding the stay, (a) a party may file notice of related case and (b) a plaintiff may file an amended complaint to add a PAGA claim to a wage and hour putative class action provided that no answer to the original complaint has been filed.

The Court issues the stay to provide for an orderly schedule for briefing and hearings on procedural and substantive pleadings challenges. This stay precludes without limitation the filing of any demurrer, motion to strike, motion challenging the jurisdiction of the Court or cross-complaint until further order of the Court.

**DISCOVERY STAY UNTIL FURTHER ORDER**

The Court hereby imposes a stay on all discovery proceedings until further order of the Court including any obligation to make initial disclosures. This stay does not prevent the parties from informally exchanging documents or information that may assist in their initial evaluation of the issues presented in this case. This stay ordered by the Court for purposes of case management is not a stay under Code of Civil Procedure section 583.310 unless the Court so orders.

## INITIAL STATUS CONFERENCE

The purpose of the Initial Status Conference is to identify a fair and efficient way of proceeding with the case. The Court encourages the parties to propose approaches to case management.

The Court orders counsel for all parties to confer via telephone, videoconference or other real time technology, at least **ten court days** before the Initial Status Conference. The purpose of the meeting is to discuss the issues set out below so that counsel can prepare a Joint Statement to be filed with the Court **five court days** before the Initial Status Conference.

All parties in Department 7 must sign up with an e-service provider and activate a message board so that the Court can communicate with counsel prior to the ISC. The Court orders the parties to agree upon and sign up with an e-service provider (Case Anywhere, or File & ServeXpress) at least **five court days** before the ISC. So that the Court can promptly issue an order appointing the e-service provider, the Court orders Plaintiff's counsel to identify the selected e-service provider by sending an email to Dept. 7 at SSCDept7@lacourt.org upon agreement of an e-service provider.

Please remember that **electronic service** is not the same **as electronic filing**.

## PREPARING FOR THE ISC AND PREPARATION OF THE JOINT STATEMENT

Plaintiff's counsel should take the lead in preparing the Joint Statement and in ensuring that it includes a brief description of the facts and causes of action and addresses the following questions. To the extent the parties disagree on any question, each party should set out their position in a separate paragraph beneath the issue or question heading.

1. Are there any issues of judicial recusal or disqualification?
2. The case type:
   (a) wage and hour class action with or without PAGA;
   (b) other class action (describe);

(c) construction defect;

(d) mass tort;

(e) insurance coverage; or

(f) other (describe).

Each party should *briefly* describe the nature of the case, and the claims and defenses. For wage and hour class actions, the parties should describe, to the extent known, the nature of the defendant's business, plaintiff's relevant work duties and the alleged work violation(s).

3. The status of service and notice(s) of appearance(s) by defendant(s).

4. Whether any party intends to challenge jurisdiction (subject matter or personal).

5. The parties' selected e-service provider (Case Anywhere or File & ServeXpress).

6. What provisions should be made for the preservation of evidence.

7. What provisions should be made for electronically stored evidence.[1]

8. Do the parties need a limited- or non-dissemination protective order? (The court recommends the model protective orders found on the Los Angeles Superior Court website (www.lacourt.org) under the Complex Court tab ("Civil Tools for Litigators."))

9. A proposed deadline for adding and serving any new parties.

10. Should either or both the pleading and discovery stay be lifted and, if so, when and for what purposes?

---

[1] If electronically stored information must be produced, the court encourages the parties' respective IT consultants/employees to participate in the meet and confer process addressing (1) the information management systems employed by the parties; (2) the location and custodians of information (including the identification of network and email servers and hard drives maintained by target custodians); (3) the format in which electronically stored information will be produced; (4) the type of ESI that will be produced, i.e., data files, emails, etc.; and (5) appropriate search criteria for focused requests.

11. The identification of any "related case". (Answer question 15 for wage and hour class action/PAGA matters.)

12. A service list identifying all primary and secondary counsel along with their firm names, addresses, telephone numbers and email addresses.

13. Recommended orders to be made at the ISC.

14. Recommended date for the next status conference.

**FOR WAGE AND HOUR PUTATIVE CLASS ACTIONS/PAGA MATTERS**

15. Each party should state, if known: (a) the estimated size of any putative class; (b) a description (including case numbers) of any related or potentially related cases pending in other departments of the Los Angeles Superior Court or any other court (including class actions with overlapping class definitions); and (c) whether a class representative has or is expected to file a PAGA claim either as an amendment in this lawsuit or filed separately, independent of this lawsuit—and if so, whether such separate lawsuit should be deemed related to this lawsuit; and if not, why not. (Parties are encouraged to review their obligations regarding notices of related cases.)

16. Does any party intend to move to compel arbitration? Before filing a motion to compel arbitration, the defendant must provide the plaintiff with a copy of the arbitration agreement, and meet and confer with counsel to determine whether the plaintiff will oppose the motion to compel arbitration.

The defendant so intending to move is required to provide a copy of the relevant agreements purportedly containing the arbitration provisions well before the ISC meet and confer, and plaintiff's counsel is expected to have formed a position as to whether plaintiff will or will not oppose a demand for arbitration and whether discovery should be opened relative to the subject of arbitration.

17. The parties' positions on "class list" discovery and arrangements for a *Belaire-West* notice process.

18. Are the parties committed to engage in early mediation and if so, (a) when is the mediation scheduled to occur and (b) what accommodations, if any, do they parties seek from the court? (Note: this should be discussed with clients well in advance of the ISC so that counsel are in a position to make commitments at the ISC.)

**PLAINTIFF'S COUNSEL TO SERVE THIS ISC ORDER**

The Court orders Plaintiff's counsel to serve this Initial Status Conference Order on counsel for all other parties, or if counsel's identity is not known, on the parties within seven days of service hereof.

Dated: 07/14/2025

Samantha Jessner / Judge

Samantha P. Jessner
Judge of the Superior Court